**RECEIVED**

OCT 2 6 2018

Clerk, U.S. Courts
District of Montana
Missoula Division

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

JEREMY MACGREGOR,

Petitioner,

vs.

WARDEN MCTIGHE, TIM FOX,

Respondents.

Cause No. CV 18-58-H-DLC-JTJ

ORDER AND FINDINGS AND
RECOMMENDATIONS OF UNITED
STATES MAGISTRATE JUDGE

Petitioner Jeremy MacGregor, a state prisoner proceeding pro se, filed this

action under 28 U.S.C. § 2254. For the reasons set forth below, MacGregor's

petition should be denied because it does not survive deferential review under the

Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and 28 U.S.C.

§ 2254(d).

I.     **Procedural History**

On April 15, 2010, in Helena, Montana, MacGregor shot his wife, Jennifer,

and the family's live-in nanny, Betsy Mart.  At trial, MacGregor admitted to

shooting the women and acknowledged drinking alcohol on the night in question,

but attempted to explain his behavior, in part, to unknowingly consuming

marijuana-laced cookies at a local bowling alley earlier in the evening.  In addition

to an affirmative defense of involuntary intoxication, MacGregor also advanced

1

various mitigating circumstances in an effort to establish that he did not act deliberately. At the conclusion of his trial,[1] the jury found MacGregor guilty of two counts of Attempted Deliberate Homicide. MacGregor was sentenced to 100 years for each count with the sentences to run concurrently and the trial court also imposed a 50-year parole eligibility restriction.

### Direct Appeal

MacGregor timely filed a direct appeal. Koan Mercer, from the Montana Appellate Defender's Office, was appointed as MacGregor's appellate counsel. MacGregor fired Mercer during the proceedings, apparently because Mercer refused to raise issues on direct appeal that MacGregor wished to advance. See e.g., (Doc. 1-1 at 108-09; 118-21.) MacGregor was allowed to proceed pro se, but after attempting to file a brief without the assistance of counsel, MacGregor's appeal was rejected by the Montana Supreme Court based upon a failure to comply with the Montana Rules of Appellate Procedure. *Id.* at 110-11.[2] MacGregor

---

[1] MacGregor's trial took place in Montana's First Judicial District, Lewis and Clark County.

[2] MacGregor contends his appeal was rejected because it lacked a blue cover page and he did not supply 9 copies of the brief. His contention is incomplete. The Montana Supreme Court order directing MacGregor to refile the brief explains that he failed to follow: M.R. App. P. 11(4)(a) (requiring a principal brief using a proportionately spaced typeface shall not exceed 10,000 words); M.R.App. 12(1)(H) (Appellant's brief shall contain, under an appropriate heading the judgment, order, findings of fact, conclusions of law, or decision in question, together with the memorandum opinion in support thereof); and M.R. App. P.11(6)(a)(requiring cover of Appellant's brief to be blue). See, *State v. MacGregor*, DA 11-0498, Or. at 1 (filed Oct. 12, 2012). The Court returned the deficient brief to MacGregor and directed him to refile a conforming brief, along with 9 copies, within 60 days. *Id.* at 2.

requested that counsel be reappointed to represent him. *Id.* at 114. The Court

granted MacGregor's request. Mercer was again appointed and ultimately handled

the appeal. See, *Id.* at 122-24; 126-127.[3]

MacGregor raised the following claims on direct appeal: 1) the trial court

erred in denying MacGregor's motion for new trial based upon juror misconduct;

2) the trial court erred by failing to inquire into MacGregor's ineffective assistance

of counsel claim and the voluntariness of his decision to represent himself; 3) the

trial court erred in denying MacGregor's speedy trial claim; 4) the trial court erred

in admitting evidence of MacGregor's prior assault on his wife; 5) plain error

review was appropriate based upon the erroneous mitigated deliberate homicide

instruction that was given to the jury; and, 6) the trial court improperly imposed

parole conditions. The Montana Supreme Court affirmed MacGregor's

convictions. See, *State v. MacGregor*, 2013 MT 297, 372 Mont. 142, 311 P. 3d

428.

Pertinent to MacGregor's pending petition, the Court determined that the

trial court made an adequate inquiry into MacGregor's complaints about trial

counsel in determining his claims lacked merit and also took adequate precautions

to ensure that MacGregor knowingly and voluntarily waived his right to counsel.

---

[3] See also, Section III(B)(iv) of this order for the Montana Supreme Court's summary of the
direct appeal proceedings.

*Id.* at ¶¶ 24-29.

**Postconviction Proceedings**

In December of 2014, MacGregor timely filed a petition for postconviction relief. The district court did not order the State to file a response. On October 6, 2016, the district court issued a 29-page reasoned opinion which denied each of MacGregor's claims on the merits and dismissed the petition.[4]

The district court determined, relative to MacGregor's complaints about appellate counsel, that MacGregor failed to establish counsel's performance was ineffective under *Strickland v. Washington*, 466 U.S. 668 (1984).[5] Notably, the district court held:

> MacGregor was appointed professional counsel and provided the opportunity to have his case heard by the Montana Supreme Court. Where MacGregor instructed Mercer to appeal certain issues and Mercer declined, the Court must presume Mercer properly evaluated MacGregor's case and presented only non-frivolous issues to the Supreme Court. Mercer is well within the bounds of professional judgment to decline certain requests from his client. MacGregor's petition provides no evidence that another attorney would have acted differently under the circumstances.

---

[4] Although not provided by MacGregor, a copy of the district court's order was attached to the Appellee's Response to MacGregor's direct appeal of the denial of his postconviction petition. See, *MacGregor v. State*, 2018 MT 74N, Br. of Appellee (filed Oct. 3, 2017). All state court briefing and opinions are available at: https://supremecourtdocket.mt.gov/ (accessed October 24, 2018). For purposes of clarity, the Clerk of Court will be directed to file a copy of the district court order into the record of these proceedings.

[5] To establish ineffective assistance of counsel under *Strickland*, a prisoner must demonstrate both (1) that counsel's performance was deficient, and (2) the performance prejudiced the defense. *Strickland*, 466 U.S. at 688-93.

> Given the strong presumption that counsel's conduct falls within the
> wide range of reasonable professional assistance, MacGregor's
> argument fails to overcome the presumption that, under the
> circumstances, the challenged action (or inaction) could be considered
> sound appellate strategy.  Additionally, MacGregor fails to establish a
> reasonable probability that the result of his [proceedings] would have
> been different had counsel requested an over-length brief.

*MacGregor v. State*, Cause No. BDV-2014-951,Or. Denying PCR Relief, at 7

(filed Oct. 6, 2016).  Where applicable, the district court order denying

MacGregor's petition will be discussed in greater detail below.

**Postconviction Appeal**

On appeal MacGregor asserted that Mercer declined to file a motion for an

over-length brief, pursuant to MacGregor's wishes, and instead omitted claims that

MacGregor wished to include.  MacGregor contended Mercer's omissions resulted

in meritorious claims not being preserved and that the merit of the omitted claims

was apparent by Mercer's failure to file an *Anders* brief.[6]

On appeal, MacGregor raised the following claims based upon Mercer's

purported ineffective assistance: 1) MacGregor's right to a fair trial before an

impartial tribunal was violated; 2) MacGregor was entitled to be charged by

preliminary hearing or grand jury indictment rather than by information; 3)

---

[6] When appellate counsel is unable to find *any* non-frivolous issues for appeal, counsel shall file
a brief advising the Court accordingly, pursuant to *Anders v. California*, 386 U.S. 738 (1967).
Because Mercer raised several claims on appeal he deemed to be potentially meritorious, it
would have been nonsensical for Mercer to have filed an *Anders* brief.

collusion between the trial judge, law enforcement, and public defender; 4)
MacGregor's right to counsel was violated when the trial court failed to obtain an
unequivocal waiver prior to designating standby counsel as co-counsel; 5) co-
counsel, the trial court and the State violated MacGregor's right to compulsory
process by failing secure the presence of a potential witness for trial; 6) the
prosecutors should have recused themselves after acting as "witnesses" by signing
the motion for leave to file the information; and 7) the restitution order was illegal
because the presentence investigation report was deficient. See e.g., *MacGregor v.
State*, 2018 MT 74N, ⁋ 10.

The Montana Supreme Court analyzed MacGregor's ineffective assistance
of appellate counsel claims under the *Strickland* standard. The Court also noted
that appellate counsel need not raise every nonfrivolous issue requested by his
client, *id.* at ⁋ 9, citing *Jones v. Barnes*, 463 U.S. 745, 750-54 (1983), and that
appellate counsel is to exercise professional judgment and declining to raise a
claim on appeal does not constitute deficient performance unless the claim was
plainly stronger than those presented to the appellate court. *Id.*, citing *Davila v.
Davis*, _ U.S. _, 137 S. Ct. 2058, 2067 (2017).

The Court determined the district court properly analyzed each of
MacGregor's postconviction claims and found them to be lacking in merit. To the
extent that any of the claims were not frivolous and/or wholly lacking merit, the

6

Court found the claims Mercer chose not to raise were not "plainly stronger" than those presented in direct appeal. *Id.* at, ⁋ 11 (citations omitted).  The Court held Mercer exercised reasonable professional judgment in deciding not to raise the claims MacGregor sought to include on direct appeal and that MacGregor failed to overcome the presumption that Mercer acted in a reasonable manner. *Id.* at ⁋ 12. Because MacGregor failed to establish deficient performance, the Court declined to analyze the second prejudice prong of *Strickland*.  *Id.*  The Court affirmed the dismissal of MacGregor's petition. *Id.* at ⁋ 13.

## II.   MacGregor's Claims

In the instant petition, MacGregor raises the following claims:

1) His right to due process was violated when he was charged with felonies and subsequently denied a preliminary hearing and/or indictment by grand jury, preventing his presence at a critical stage of the proceedings, and further violation occurred when appellate counsel refused to raise the claim on direct appeal, (Doc. 1 at 4, ⁋ 13(A); 5);

2) His right to due process was violated by the prosecutor giving testimonial sworn affidavits during the charging proceedings and subsequently failing to recuse himself, creating a conflict of interest; further violation occurred when appellate counsel refused to raise the claim on direct appeal or file an *Anders* brief, *Id.* 1 at 5, ⁋ 13(B); 6;

3) His right to due process and confrontation was violated when the trial court, county attorney, and defense counsel colluded to prevent MacGregor from presenting testimony from Michelle Huff at trial, who would have purportedly supported MacGregor's defense theory of involuntary intoxication, *Id.* at 7; 10;

7

4) His due process right to a fair trial before an impartial tribunal was violated when the trial judge involved himself in the accusatory process and subsequently failed to recuse himself, *Id.* at 8;

5) His right to due process was violated when the trial court, county attorney, and defense counsel colluded to suppress videotape footage from the bowling alley, that would have purportedly supported MacGregor's defense theory of involuntary intoxication, *Id.* at 9-10;

6) His right to due process and the assistance of counsel was violated when MacGregor initially asserted his right to self-representation, but subsequently requested counsel; the trial court appointed stand-by counsel and then unlawfully converted stand-by counsel to co-counsel, *Id.* at 11; and,

7) His right to due process and access to the courts was violated when the Montana Supreme Court denied MacGregor's pro se appeal and, as a result, forced him to choose between proceeding pro se or proceeding with an ineffective attorney. The Court also denied MacGregor's motion to substitute appellate counsel and denied him a complete copy of the record. *Id.* at 13.

## III.   Analysis

On April 24, 1996, Congress enacted the AEDPA, which applies to all petitions for writ of habeas corpus filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320, 326 (1997). The instant petition is governed by the AEDPA.

### A. Deferential Review under AEDPA

Under the AEDPA, an application for a writ of habeas corpus by a person in custody under a judgment of a state court may be granted only for violations of the Constitution or laws of the United States. 28 U.S.C. § 2254(a); *Williams v. Taylor*,

8

529 U.S. at 375 n. 7 (2000). Under Section 2254(d), a state prisoner whose claim has been "adjudicated on the merits" cannot obtain federal habeas relief unless that adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." See also *Harrington v. Richter*, 526 U.S. 86, 98 (2011) ("By its terms § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (d)(2).").

A state court decision is "contrary" to clearly established United States Supreme Court precedent "if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases, 'or if it confronts a set of facts that is materially indistinguishable from a decision'" of the Supreme Court and nevertheless arrives at a result different from the Supreme Court precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

A state court decision is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," where the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the Petitioner's case. *Williams*, 529 U.S. at 413. However, "a federal habeas court

9

may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable." *Id.* at 411.

"AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' …and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010).  The standard is " 'difficult to meet,'" and a "petitioner carries the burden of proof." *Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

Under AEDPA, when a state court does not explain the reason for its decision, this Court is instructed to "look through" to the last state-court decision that provides a reasoned explanation capable of review.  See, *Shackleford v. Hubbard*, 234 F. 3d 1072, 1079 n. 2 (9th Cir. 2000); *Murray v. Schriro*, 745 F. 3d 984, 996 (9th Cir. 2014).

**B. Clearly Established Federal Law**

The Sixth Amendment provides a right to effective representation on all direct appeals the state grants as of right.  See, *Evitts v. Lucey*, 469 U.S. 387, 393 (1985).  In assessing a claim that counsel's representation did not meet the constitutional minimum, the court is to "indulge in a strong presumption that counsel's conduct f[ell] within the wide range of professional assistance."

*Strickland*, 466 U.S. at 689.  Effective legal assistance does not mean that appellate

counsel must appeal every question of law and raise every non-frivolous issue

requested by a defendant.  *Jones v. Barnes*, 463 U.S. 745, 751-754 (1983).

However, appellate counsel's performance must meet prevailing professional

norms.  *Smith v. Murray*, 477 U.S. 527, 535-36 (1986).

MacGregor argues that Mercer rendered ineffective assistance by failing to

seek leave of the Montana Supreme Court to file an over-length brief and present

several issues on direct appeal which MacGregor believed to be meritorious.  First,

MacGregor must show that appellate counsel's performance was objectively

unreasonable, which requires him to demonstrate that counsel acted unreasonably

in failing to discover and brief a meritorious issue.  *Moorman v. Ryan*, 628 F. 3d

1102, 1106 (9th Cir. 2010).  Next, MacGregor has the burden of showing prejudice,

that is demonstrating a reasonable probability that, but for appellate counsel's

failure to raise the claims, he would have prevailed in his appeal.  *Id.*  The Ninth

Circuit has discussed the application of *Strickland* to ineffective assistance of

appellate counsel claims:

> [t]hese two prongs partially overlap…In many instances, appellate
> counsel will fail to raise an issue because she foresees little or no
> likelihood of success on that issue; indeed, the weeding out of weaker
> issues is widely recognized as one of the hallmarks of effective
> appellate advocacy…Appellate counsel will therefore frequently
> remain above an objective standard of competence (prong one) and
> have caused her client no prejudice (prong two) for the same reason-
> because she declined to raise a weak issue.

*Miller v. Keeney*, 882 F. 2d 1428, 1434 (9th Cir. 1989); see also, *Bailey v. Newland*, 263 F. 3d 1022, 1028-29 (9th Cir. 2001). The question for analysis is whether the unraised issue, if raised, would have "led to a reasonable probability of reversal." *Id.* at 1434-35.

### i. Claims 1, 2, and 4- Indictment by Grand Jury/Preliminary Hearing

These three claims all take issue with the charging process utilized by the State of Montana. The Court is familiar with the claims MacGregor seeks to advance; they are not novel. MacGregor asserts because he was not indicted by a grand jury, he should have been entitled to a preliminary hearing. He also believes the fact that the prosecutor signed a sworn affidavit and the trial judge reviewed the affidavit in making a determination of probable cause, and, subsequently permitting the filing of an information, makes both the prosecution and the court parties to the accusatory process. Because of this, MacGregor believes both the prosecutor and the trial judge should have recused themselves from the subsequent criminal proceedings.

Apparently, MacGregor discussed advancing such claims with Mr. Mercer, but was advised that these claims were lacking in merit and that Mercer would not present the claims on direct appeal. See e.g., (Doc. 1-1 at 200)(Mercer informs MacGregor, "I have already sent you the cases establishing that the lack of a preliminary hearing is not a violation of the Due Process Clause."). Mercer's

assessment is correct.  This Court has repeatedly found such claims are wholly

lacking in any substantive merit.[7]

Thus, any allegation that appellate counsel was ineffective for failing to raise

claims based upon the charging procedures utilized by the State of Montana is,

likewise, meritless.  Cf., *Juan H. v. Allen*, 408 F. 3d 1262, 1273 (9th Cir.

2005)(counsel cannot be ineffective for failing to raise a meritless objection).  Or,

to put it another way, MacGregor cannot establish that Mercer's performance was

objectively unreasonable for failing to raise these claims, because the claims at

issue were not meritorious.  See, *Moorman,* 628 F. 3d at 1106.

Correspondingly, because these claims lack merit on their face, there is no

manner in which MacGregor could meet his burden of establishing that the denial

of these claims by the state courts was contrary to or involved an unreasonable

application of clearly established federal law.  See, 28 U.S.C. § 2254(d)(1).[8]  These

---

[7] See e.g., *Ayers v. Kirkegard*, CV-14-110-BLG-DLC, 2015 WL 268870, at *2 (D. Mont. Jan. 21, 2015)(granting a motion to file an information "does not make a judge part of the accusatory process any more than issuing a search warrant makes a judge part of the investigative process"); *Smith v. Frink*, CV-14-83-M-DLC, Or. at 3 (D. Mont. May 19, 2014)(prosecution via information is entirely consistent with federal guarantees of due process); *Stewart v. Green*, CV-15-36-BU-DLC, Or. at 3 (D. Mont. Sept. 19, 2016) (pretrial procedure proper under Montana's Constitution and charging statutes; no violation of the Fifth Amendment); *Dunsmore v. State*, CV-15-95-M-DLC, Or. at 2-3 (D. Mont. Dec. 20, 2016)(claim of ineffective assistance of appellate counsel frivolous because charging cases in Montana by information rather than by grand jury has been found to be constitutional; claim that Fifth Amendment rights were violated because he was not indicted by a Grand Jury is frivolous because the Fifth Amendment has not been incorporated to the states).

[8] To the extent that MacGregor believes Mercer should have filed an *Anders* brief on these issues, that claim, too, is wholly without merit.  See, fn. 6, supra.

claims should be denied.

### ii. Claims 3 and 5- Denial of Witness/Videotape Evidence

Apparently, during direct appeal proceedings, MacGregor urged Mercer to advance claims based upon the failure of his stand-by trial counsel to procure the testimony of Michelle Huff and the failure to secure surveillance videotape from the bowling alley on the night of the shootings. MacGregor contended that Michelle Huff would testify that she supplied MacGregor with marijuana cookies and he ingested them. He believed the video tape would show the presence and consumption of said cookies. Taken together, these pieces of purported evidence would, in turn, support MacGregor's defense theory of voluntary intoxication. *See e.g.*, (Doc. 1-1 at 57-62.)

Mercer explained his rationale to MacGregor for electing not to raise either claim on direct appeal:

> In the end any claim regarding Michelle Huff- be it some sort of [ineffective assistance of counsel] claim or a denial of the right to compulsory process or an abuse of discretion for not granting a continuance to find her or not granting immunity- fails on the same problem: nothing in the record indicates that she would have testified in a manner favorable to you. To make any claim regarding Michelle Huff work, you are going to need an affidavit from either Michelle Huff or someone who talked with her affirmatively stating that if Michelle Huff had been brought to your trial, she would have testified to the existence of the marijuana cookies. If you can obtain such an affidavit, I think you will have some very interesting claims in your petition for post-conviction relief, but that is not where you are now. As things stand on direct appeal, you cannot successfully argue that you were denied your right to subpoena favorable witnesses because

14

there is no indication that she would have been a favorable witness.

It's the same thing for the bowling alley footage. Nothing in the record demonstrates that the video would have shown Michelle Huff bring you cookies. Like not interviewing or getting Michelle Huff to trial, I agree there might be a claim that counsel's efforts to obtain the tape were deficient, but what about the prejudice prong of ineffective assistance? Without the video or an affidavit from someone who has watched the video, there is nothing to show that the video would have shown the cookies and changed the outcome of trial. Again, if you get the video or an affidavit from someone who actually watched the video and saw the cookies, then you will have an interesting claim in your petition for post-conviction relief; but right now on the existing record, there is no viable claim.

(Doc. 1-1 at 200-201.)

On postconviction, MacGregor continued to advance the same claim, alleging ineffective assistance of trial counsel for failing to secure the purported videotape footage and Huff's presence at trial and ineffective assistance of appellate counsel for failing to raise the issues on appeal. See generally, (Doc. 1-1 at 57-62.) But, MacGregor still was unable to demonstrate either the existence of either video footage showing the presence of marijuana cookies or favorable testimony from Huff. See e.g., *Id*. at 62 (MacGregor opines "[h]ad [I] questioned Michelle Huff or taken her deposition with immunity granted and had she testified that marijuana cookies were present, a plea deal including mitigation could have been done. If she testified the marijuana cookies were not present, then [I] would never have proceeded to trial and would have [taken] prosecution's plea deal of one count of attempted mitigated homicide).

15

The state district court found under *Strickland*, that MacGregor failed to establish that the action, or rather inaction, of trial counsel failing to obtain the purported videotape evidence or present the testimony of Michelle Huff, did not fall within the range of reasonable assistance or could not be considered sound legal strategy. *MacGregor v. State*, Cause No. BDV-2014-951, Or., at 17-19. Further, MacGregor did not establish a reasonable probability that the result of his trial would have been different had either piece of evidence been presented. *Id.* Finally, the state district court gave deference to Mercer's decision not to raise either issue on appeal. *Id.* The Montana Supreme Court agreed and determined MacGregor failed to establish Mercer performed deficiently or that the district court erred when it denied MacGregor's claim. *MacGregor v. State*, 2018 MT 74N, ¶ 12.

MacGregor presents nothing before this Court that would demonstrate he is entitled to relief under the deferential standard of § 2254(d). Based upon the record before this Court, it appears that the state courts were well within their bounds in denying MacGregor's claims. As a preliminary matter, all of the individuals on MacGregor's bowling team were interviewed regarding the night of the incident. None of the individuals, including Dave and Michelle Huff, recalled anyone bringing any food items with them, specifically cookies or brownies, or observed MacGregor consuming such items. See, Sgt. Scow report, (Doc. 1-1 at

16

191); See also, *MacGregor v. State*, 2018 MT 74N, Br. of Appellee at 20 (filed

Oct. 3, 2017)(noting that during trial 10 witnesses testified they did not see any

baked goods present at the bowling alley)(citations to trial record omitted).

Additionally, it appears that, at least initially, MacGregor sought the

testimony of both Dave and Michelle Huff at trial. Their testimony was the subject

of a pretrial hearing, during which MacGregor requested the trial court order the

presence of both Huffs and also grant them immunity for their testimony. The trial

court responded as follows:

> There has been no indication that [the Huffs] would say what you think—
> what you're saying they are going to say. If they come in here, if you can
> bring them in here, they won't testify, I'll grant them immunity, if that is the
> issue. But I'm not going to grant anybody immunity on what I know
> ....
>
> My ruling is that you've had all of this time to get the Huffs. They're not
> available. You can still try to obtain them over the weekend through your
> process server. If they are subpoenaed and brought in here Monday and
> refuse to testify because of some problem they've got incriminating
> themselves, I'll grant them immunity. But if you can't find them, you can't
> find them. I mean, that happens from time to time.

(Doc. 1-1 at 136).

Apparently MacGregor was able to secure Dave Huff's presence at trial, but

his testimony was not favorable to MacGregor. He denied the existence of any

marijuana cookies at the bowling alley on the night of the shootings. See e.g.,

(Doc. 1-1 at 59)("Michelle Huff's husband testified at trial denying the presence of

the cookies").

17

In short, there is no indication that the purported bowling alley videotape

exists or that anyone, particularly the State of Montana, ever had possession of

videotape from the bowling alley.  Even if the tape existed, there is no way to

know what it would have shown.  Perhaps the video could be exculpatory, but it

also could show nothing and further inculpate MacGregor.  Seven years after his

trial, MacGregor has still not provided any indication of the existence of a

videotape, much less that such tape held any evidentiary value.  The same can be

said of the purported testimony of Michelle Huff.  There is no indication that, had

she testified at trial, she would have provided testimony helpful to MacGregor.

Certainly her husband did not provide helpful testimony.  And when Michelle Huff

was interviewed by law enforcement prior to MacGregor's trial, she denied

knowledge of the existence of marijuana cookies on the night in question which

would seem to indicate that her trial testimony, likewise, would be unhelpful.

The only support MacGregor finds for his claims of ineffective assistance of

counsel are his own conclusory allegations about what the evidence might have

shown.  This speculation is simply is insufficient for MacGregor to carry his

burden or establishing that appellate counsel performed in an unreasonable

manner.  *Moorman,* 628 F. 3d at 1106.  Mercer explained the reasons why he chose

not to raise either of these claims on direct appeal and advised MacGregor what

type of supplemental information he would need to gather for postconviction

18

review. As set forth above, MacGregor has failed to supply any such additional
information that would lend credence to his claims.

Accordingly, MacGregor has failed to demonstrate that the state court
decision was contrary to, or involved an unreasonable application of clearly
established federal law. See, § 2254(d)(1). These claims should also be denied.

### iii. Claim 6- Due Process Violation Relative to Appointed Counsel

MacGregor argues the trial court erred by initially allowing him to proceed
pro se, but then assigning counsel to act in a limited capacity upon MacGregor's
pretrial re-assertion of his right to counsel. (Doc. 1 at 11.)[9] According to
MacGregor, the status of appointed stand-by counsel was converted to co-counsel
without the trial court warning MacGregor that "co-counsel is not counsel in the
traditional sense but being part of pro se representation." *Id*. MacGregor asserts
that the trial court confused the difference between stand-by counsel and co-

---

[9] MacGregor apparently fired his first two public defenders. Two weeks later, MacGregor
requested the appointment of counsel and then promptly attempted to fire counsel. Because
MacGregor was in the process of undergoing a mental health evaluation, the trial court refused to
allow MacGregor to waive counsel until the completion of the evaluation. Once MacGregor was
found to be fit to proceed, MacGregor again expressed his desire to represent himself. The trial
court again warned MacGregor of the dangers of proceeding pro se, but allowed him to do so.
The trial court apparently appointed two public defenders as stand-by counsel over MacGregor's
objection. Prior to trial, MacGregor moved for the substitution of his standby counsel,
requesting different attorneys be appointed to act in this capacity. MacGregor later requested the
court appoint "co-counsel" to assist in a limited capacity. The court declined to appoint new
standby counsel, but apparently granted MacGregor's request to allow advisory counsel to
perform certain tasks during the trial. See e.g., *MacGregor v. State*, 2018 MT 74N, Br. of
Appellee, 28-30 (filed Oct. 3, 2017); see also, *State v. MacGregor*, 2013 MT 297A, ¶¶ 28-29;
(Doc. 1-1 at 199-200).

counsel. *Id.* Further, MacGregor contends that his relinquishment of counsel was

not unequivocal and that he believed he was being represented. MacGregor

believes this resulted in a structural error that warrants a new trial and that

appellate counsel unreasonably refused to raise the issue on appeal. *Id.*

Although MacGregor's claim is somewhat difficult to follow, appellate

counsel's analysis of this claim and explanation of his reasoning for electing not to

raise the claim on appeal, is illustrative. Mercer explained as follows:

> I read your letter of June 22, 2012, as suggesting a claim that your
> right to counsel was violated by the district court's January 5, 2011
> Order granting your "motion for co-counsel" because the district court
> did not hold a hearing at that time to advise you of the risks and
> ensure that your now more limited waiver of your right to counsel was
> knowing and voluntary. Allowing a limited waiver of counsel without
> a full *Faretta* colloquy[10] would be a good claim *if* at the time of the
> January 5, 2011 Order you had been represented by full counsel and
> were partially giving up that right. The *United States v. Davis*, 269 F.
> 3d 514 (2001), case you cite is a good example of such a claim where
> the defendant went from full attorney representation to hybrid
> attorney representation mid-trial without a proper *Faretta* colloquy.
> *Hill v. Commonwealth*, 125 S.W. 3d 221 (Ky. 2004), is another
> example of a case where the defendant's limited waiver of counsel
> was invalid because the district court went from appointment of full
> counsel to hybrid counsel without ever conducting a *Faretta* colloquy.
>
> Your situation is unfortunately the opposite. You had already validly
> waived your entire right to any counsel following a full *Faretta*
> colloquy. On January 5, 2011, you were not going from full counsel
> to a partial waiver of counsel. Rather you were going from a

---

[10] "Once a defendant makes an unequivocal request to proceed pro se, the court must hold a
hearing- commonly known as a *Faretta* hearing- to demonstrate whether the defendant is
knowingly and intelligently forgoing his right to appointed counsel." *United States v. Farias*,
618 F. 3d 1049, 1051-52 (9th Cir. 2010).

complete waiver of counsel to (arguably) being given back partial representation by counsel. I can find no case authority or logic that your previous, valid waiver of all rights to counsel did not also encompass a later partial waiver of counsel. Nor can I locate any authority that the waiver of the right to self-representation that is inherent in ever[y] invocation of the right to counsel requires a separate, *Faretta*-style hearing. Any claim in this area would also run into the factual problem that your statements in the record around trial appear to manifest a strong desire to have counsel perform certain representational tasks for you. It appears from the existing record that having the attorneys serving as co-counsel at trial was entirely your own idea.

(Doc. 1-1 at 199-200).

MacGregor attempted to raise this same claim in postconviction arguing a violation of his constitutional rights by a perceived technical difference between "standby counsel" and "co-counsel" which purportedly resulted in deficient representation. Because MacGregor believes he equivocated on his request for counsel, he should have been presumed to have been making a full request for the assistance of counsel which he purportedly did not receive. The state district court determined, citing to the Montana Supreme Court's decision on direct appeal, "the record clearly reflects that the District Court took adequate precautions to ensure that MacGregor waived counsel voluntarily and knowingly." *MacGregor v. State*, Cause No. BDV-2014-951, Or., at 14, referencing *MacGregor*, 2013 MT 297, ₧ 29. Further, the state district court and the Montana Supreme Court both determined MacGregor failed to establish Mercer performed deficiently in electing not to raise the claim on appeal. See e.g., *MacGregor*, Cause No. BDV-2014-951,

21

at 14-15.

The Sixth Amendment guarantees that in all criminal prosecutions a defendant shall have the right to the assistance of counsel for his defense.  U.S. Const. amend. VI, *Powell v. Alabama,* 287 U.S. 45, 66 (1932).  The Sixth Amendment also guarantees a criminal defendant the right to refuse the assistance of counsel and to represent himself.  *Faretta v. California*, 422 U.S. 806, 834 (1975).  While a defendant's choice to proceed pro se "must be honored out of 'that respect for the individual which is the lifeblood of the law,'" *id.* (citing *Illinois v. Allen*, 397 U.S. 337, 350-51 (1970)), the Constitution "require[s] that any waiver of the right to counsel be knowing, voluntary and intelligent. *Iowa v. Tovar*, 541 U.S. 77, 88 (2004).  Thus, a defendant who elects to waive counsel and represent himself "must be warned specifically of the hazards ahead." *Tovar*, 541 U.S. at 89.

As set forth above, the state courts determined that MacGregor knowingly, voluntarily, and intelligently waived his right to counsel.  MacGregor has not alleged sufficient facts in these proceedings to undermine these prior state court determinations.  To the extent that MacGregor seems to argue that he was entitled to repeated *Faretta*-style hearings, there is no clearly established federal law that provides for such a right.  See, e.g., *Carnley v. Cochran*, 369 U.S. 506 (1962); *Marshall v. Rodgers*, 569 U.S. 58, 62 (2013)(per curiam).

Moreover, to the extent that MacGregor may believe he was entitled to some form of reverse-*Faretta* hearing, advising him of the dangers of a limited waiver and/or representation by counsel, whether it be co-counsel, stand-by counsel, or hybrid representation, and the specific parameters of such representation, no corresponding requirement exists. In fact, although a court may appoint advisory counsel, a defendant has no federal constitutional right to advisory counsel. *McKaskle v. Wiggins*, 465 U.S. 168, 176-77 (1984). "If no Supreme Court precedent creates clearly established federal law relating to the legal issue the habeas petitioner raised in the state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F. 3d 952, 955 (9th Cir. 2004).

Because MacGregor was not constitutionally entitled to repeated *Faretta*-style hearings or to the assistance of advisory counsel, the Montana courts denial of this claim was not contrary to or an unreasonable application of clearly established federal law as established by the United States Supreme Court. Thus, the state court decision was reasonable and must be afforded deference.

### iv. Claim 7- Denial of Access to the Courts

MacGregor asserts that the Montana Supreme Court denied him access when it refused to relax its rules and treated him as if he were an attorney in denying his pro se direct appeal. (Doc. 1 at 13.) MacGregor contends his pro se appeal was

23

rejected because it lacked a "blue cover page" and he was unable to provide "nine copies." *Id.*[11] Accordingly, MacGregor explains by imposing these requirements, the Court essentially "forced an unwanted attorney" upon him. *Id.* MacGregor states his motion for substitution of counsel was rejected by Supreme Court Clerk Darlene Gallagher, the wife of Leo Gallagher, the Lewis and Clark County Attorney, who prosecuted MacGregor. MacGregor believes this act amounts to "official misconduct" because he apparently sought to raise a claim of malicious prosecution against Leo Gallagher and believes Darlene's acts were apparently done to shield Leo. *Id.* MacGregor also asserts he was denied a full copy of the state trial court record. *Id.*

The district court denied all of these claims on postconviction review because it found it lacked authority to review decisions made by the Montana Supreme Court and was unable to speculate as to the basis of decisions made by the Court. *MacGregor v. State*, Cause No. BDV-2014-951, Or. at 11-14. The Montana Supreme Court affirmed the denial.

The Montana Supreme Court explained the direct appeal proceedings as follows:

> On February 24, 2012, Mercer filed a Notice of Appearance. The opening brief was originally due on March 12, 2012. Upon request of counsel, and MacGregor (while he represented himself), this Court granted exensions of time to file the opening brief until April 11,

---

[11] See also, fn. 2, supra.

2012, May 11, 2012, June 11, 2012, July 11, 2012, August 11, 2012, August 20, 2012, and October 11, 2012.  Counsel sought the extension of time in May based upon MacGregor's desire to hire private counsel, which MacGregor failed to do.  On June 28, 2012, MacGregor moved to represent himself, which motion this Court granted on July 10, 2012.  On August 8, 2012, based upon MacGregor's motion that challenged the accuracy of the District Court record, we directed the Clerk of this Court to transmit the record to the Lewis and Clark County District Court to determine whether the record was complete and in conformance with the truth of the proceedings.  This effort occasioned further delay and resulted in no supplementation or amendment to the record.

On October 11, 2012, MacGregor submitted a timely brief.  We reviewed the brief, however, and issued an October 12, 2012, Order advising MacGregor of specific deficiencies in the brief and that it failed to comply with the Montana Rules of Appellate Procedure.  We granted MacGregor 60 days to comply and file a sufficient brief.

On November 5, 2012, MacGregor filed an Emergency Motion to Appoint Counsel.  This Court issued a November 14, 2012, Order that granted MacGregor's request for appointment of counsel and directed the [Appellate Defender's Office] either to enter a notice of appearance within 30 days, or to file a motion to rescind the appointment of counsel.  Mercer entered a Notice of Appearance on December 14, 2012.

Mercer moved for an extension to time to allow this Court to consider MacGregor's request for new counsel.

*State v. MacGregor*, DA 11-0498, Or. at 1-2 (filed Jan. 15, 2013).

MacGregor sought new appellate counsel because Mercer refused to raise the various issues, discussed throughout this Order, on direct appeal.  The Montana Supreme Court denied MacGregor's request for the substitution of counsel.  *Id.* at 3.  Additionally, the Court informed MacGregor, that Mercer was not

constitutionally obligated to raise every non-frivolous issue on appeal, including

those MacGregor wished to present, but rather was duty-bound to present the most

effective arguments. *Id.* at 2.

Prisoners have a constitutional right of access to the courts under the First

and Fourteenth Amendments. See *Lewis v. Casey*, 518 U.S. 343, 346 (1996);

*Vandelft v. Moses*, 31 F. 3d 794, 796 (9th Cir. 1994). The right of access is

guaranteed for direct and collateral attacks upon a conviction or sentence. *Lewis*,

518 U.S. at 354. But as set forth above, contrary to his assertions, MacGregor had

ample opportunity to challenge his conviction on direct appeal, postconviction, and

postconviction appeal. Moreover, MacGregor was represented by Mercer on direct

appeal, thus by virtue of his representation Mercer provided meaningful access to

the courts by acting on MacGregor's behalf and providing such access. See, *Entzi

v. Redmann*, 485 F. 3d 998, 1005 (8th Cir. 2007); *Bounds v. Smith*, 430 U.S. 817,

825 (1977). The fact that MacGregor has not received the outcome he desires does

not convert this matter into one of constitutional import.

To the extent that MacGregor attempts to advance a claim based upon the

Montana Supreme Court's interpretation and application of its own appellate rules,

or a purported state violation of official misconduct under Mont. Code Ann §45-7-

401, such claims are not cognizable in this Court. The violation of state law is not

grounds for federal habeas relief. *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011);

*Roberts v. Hartley*, 640 F. 3d 1042, 1046 (9th Cir. 2011); 28 U.S.C. § 2243(a).

MacGregor cites *Patterson v. Illinois*, 487 U.S. 285 (1988), for the

proposition that when one is forced to choose between self-representation and poor

counsel, the courts may create an involuntary choice. (See e.g., Doc. 1-1 at 43.)

But, *Patterson* dealt with a criminal defendant's Sixth Amendment right to counsel

during post-indictment interviews. *Patterson*, 487 U.S. at 290. A defendant's

right to counsel on appeal derives not from the Sixth Amendment, but from the

Due Process and Equal Protection Clauses of the Fourteenth Amendment. See,

*Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 160-61 (2000)(explaining that

the right to appellate counsel is based on the Fourteenth Amendment and that "the

Sixth Amendment does not apply to appellate proceedings"); *Evitts v. Lucey*, 469

U.S. 387, 392 (1985)(citing *Douglas v. California*, 372 U.S. 353 (1963)(grounding

right to appellate counsel in Fourteenth Amendment).

To the extent that MacGregor believes his rights were violated because he

was not provided substitute appellate counsel, this decision by the Montana

Supreme Court does not violate clearly established federal law. See, *Tamalini v.

Stewart*, 249 F. 3d 895, 902 (9th Cir. 2001)(although Supreme court has recognized

a qualified Sixth Amendment right to counsel of one's choice, it has not

recognized a similar right on appeal under the Due Process Clause). Thus,

MacGregor had no right to appellate counsel of his choice. Accordingly, the

27

Montana Supreme Court's decision not to appoint substitute appellate counsel to MacGregor was not contrary to and did not involve an unreasonable application of clearly established federal law. MacGregor is not entitled to relief on this claim either.

## IV.    Conclusion

MacGregor's petition should be denied because the claims he advances do not survive review under the AEDPA. Given the high level of deference due to the state courts' decisions, there is no indication that the denial of MacGregor's claims was unreasonable.

## V.    Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court

was correct in its procedural ruling." *Gonzalez v. Thaler*, 132 S. Ct. 641, 648 (2012) (quoting *Slack*, 529 U.S. at 484).

MacGregor has not made a substantial showing that he was deprived of a constitutional right. There are no close questions and there is no reason to encourage further proceedings in this Court. A certificate of appealability should be denied.

Based on the foregoing, the Court enters the following:

## ORDER

The Clerk of Court shall file a copy of the state district court order denying MacGregor's postconviction petition, *MacGregor v. State*, Cause No. BDV-2014-951,Or. (Oct. 6, 2016), into the record of these proceedings.

## RECOMMENDATION

1. MacGregor's Petition (Doc. 1) should be DENIED for lack of merit. His claims do not survive deferential review under 28 U.S.C. § 2254(d).

2. The Clerk of Court should be directed to enter judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED.

## NOTICE OF RIGHT TO OBJECT
## TO FINDINGS & RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. MacGregor may object to this Findings and Recommendation within 14

days.[12] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de novo determination by the district judge and/or waive the right to appeal.

Mr. MacGregor must immediately notify the Court of any change in his mailing address. Failure to do so may result in dismissal of his case without notice to him.

DATED this 26th day of October, 2018.

/s/ John Johnston
John Johnston
United States Magistrate Judge

---

[12] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . . . 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since MacGregor is being served by mail, he is entitled an additional three (3) days after the period would otherwise expire.